UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRITT INTERACTIVE LLC an Indiana limited liability company, <br> TOWNEPOST NETWORK INC. an Indiana corporation, <br><br> Plaintiffs, <br><br> v. <br><br> A3 MEDIA LLC an Indiana limited liability company, <br> COLLECTIVE PUBLISHING LLC an Indiana limited liability company, <br> YELENA LUCAS, <br> NEIL LUCAS, <br> JANELLE MORRISON, <br><br> Defendants. | Case No. 1:16-cv-02884-TWP-MJD |

**ENTRY ON PENDING MOTIONS**

This matter is before the Court on Plaintiffs Britt Interactive, LLC's ("Britt Interactive") and TownePost Network, Inc.'s ("TownePost") (collectively "Plaintiffs") Motion to Extend Temporary Restraining Order ("TRO") (Filing No. 11) and Defendants A3 Media, LLC ("A3 Media"), Neil Lucas, Lena Lucas and Collective Publishing, LLC ("Collective Publishing") (collectively "Defendants") Emergency Motion for Extension of Time to File Response. (Filing No. 20). For the reasons stated below Plaintiffs' Motion to Extend the Temporary Restraining Order is granted and Defendants' Motion for Extension of Time to File Response is granted in part and denied in part.

1

#### I. BACKGROUND

On October 17, 2016, a Hamilton Superior Court judge granted Plaintiffs' TRO motion, finding that Plaintiffs would suffer irreparable harm if Defendants A3 Media, Neil Lucas, Lena Lucas and Collective Publishing were to distribute any subsequent issues of "Zionsville Magazine" or "Carmel Magazine." The TRO expires October 31, 2016 at 3:55pm. Plaintiffs seek to extend the TRO, asserting that they will suffer immediate and irreparable harm if the TRO is not extended until the date of the Preliminary Injunction hearing. Defendants were given until October 31, 2016 at 10:00 a.m. to respond to Plaintiff's motion. Defendants failed to file a timely response, however at 12:14 p.m., a belated motion for extension of time to respond was filed.

A brief recitation of the background facts set forth in the state court record is instructive. Tom Britt ("Mr. Britt") founded Britt Interactive in 2003. ([Filing No. 3-4 at 8](Filing No. 3-4 at 8).) Britt Interactive published a monthly newsletter and magazine, known as Geist Community Newsletter, as well as a website, atGeist.com. *Id.* Britt Interactive also sold licenses to third-parties to use its methods, techniques, intellectual property, and system to produce monthly publications in designated territories. *Id.* On December 21, 2012 and October 17, 2013, respectively, Britt Interactive entered into a License Agreement with A3 Media, operated by Neil and Lena Lucas, to produce monthly local publications in Zionsville and Carmel, Indiana. *Id.* at 8-9. The magazines were known as "Zionsville Community Newsletter" and "Carmel Community Newsletter" (collectively the "magazines"). *Id.* at 9. Under the License Agreements, Britt Interactive retained ownership of the magazines, as well as their website domains, "atZionsville.com" and "atCarmel.com." *Id.* Britt interactive also retained the naming rights of the magazines and domains, as well as, ownership of the business processes, customer data, intellectual property and design. *Id.* at 9-10. A3 Media

was not permitted to modify the design or change the name of the magazine in any manner unless Britt Interactive gave written approval. *Id.* at 9.

In 2014, Mr. Britt established TownePost Network, which acquired all of Britt Interactive's intellectual property and License Agreements. *Id.* at 11.  On February 1, 2014, Britt Interactive and TownePost informed Britt Interactive's Licensees that customers and Licensees should submit fees and payments to TownePost. *Id.*  A3 Media, as well as other licensees, submitted management fees, page layout fees, as well as all other fees and cost, to TownePost. *Id.*

On July 21, 2015, TownePost informed the Licensees that the names and logos of the publications would change from "newsletter" to "magazine." *Id.* at 13.  A3 Media's magazines changed from "Zionsville Community Newsletter" and "Carmel Community Newsletter" to "Zionsville Magazine" and "Carmel Magazine." *Id.*  On July 11, 2016, TownePost also informed A3 Media, as well as other Licensees, that it was converting to the franchise model, and offered to sale franchises as opposed to licenses. *Id.* at 14.  The pertinent clause in the A3 Media's agreement states, "[i]n the event that Britt chooses to transform the licensees to franchisees, Licensee will be given the opportunity to purchase the territory franchise for $1.00." *Id.*  If a Licensee did not want to become a TownePost Network franchisee, then TownePost would buy out the Licensee pursuant to the Licensee Agreement. *Id.*

Neil and Lena Lucas did not inform Mr. Britt whether A3 Media would become a franchisee or select the buy-out option. *Id.*  However, on August 8, 2016, A3 Media applied for state trademarks for the names "Zionsville Magazine" and "Carmel Magazine." *Id.* at 13.  On August 24, 2016, Lena Lucas solicited quotes from printing companies. *Id.* at 16.  Lena Lucas then contacted several TownePost customers informing them to cancel agreements with TownePost and to make all checks payable to A3 Media rather than to TownePost. *Id.* at 16-17.

On September 15, 2016, customers contacted TownePost regarding A3 Media's decision to abandon TownePost's license. *Id.* at 14. On September 20, 2016, A3 Media sent a letter to TownePost, terminating services. *Id.* at 18. That same day, Lena Lucas sent an email to 4,038 customers informing them of her change in email. *Id.* Thereafter, several customers contacted Mr. Britt, asserting that they were confused regarding which magazine they may advertise in and which company they should pay. *Id.* at 19.

On September 23, 2016, Plaintiffs filed a Complaint and Motion for Preliminary Injunction in the Hamilton Superior Court 3 ("Superior Court") against the Defendants, asserting tortious interference with contracts, tortious interference with business relationships, conversion, trademark infringement, trademark infringement pursuant to the Lanham Act, violations of Indiana trademark act, and breach of contract. ([Filing No. 3-2 at 13-22](); [Filing No. 3-3 at 3-7]().) A3 Media continued publishing and distributing the magazines under the names "Zionsville Magazine" and "Carmel Magazine." ([Filing No. 3-3 at 63-65](), 68-70; [Filing No. 3-4 at 22]().) Thereafter, on October 11, 2016, Plaintiffs filed an Amended Complaint and a TRO Motion. ([Filing No. 3-4 at 7-42](); [Filing No. 3-3 at 43-50]().) On October 17, 2016, the Superior Court held a hearing and granted Plaintiffs' TRO, restraining and enjoining Defendants from distributing October issues, and any subsequent issues of the magazines, as well as, interfering with the contracts between TownePost and its advertisers, among other things. ([Filing No. 14]().) On October 21, 2016, Defendants removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. ([Filing No. 3]().) The Plaintiffs now seek to extend the TRO, which expires on October 31, 2016 at 3:55pm, asserting that there is a continued risk of irreparable harm to Plaintiffs if the TRO is not extended until Plaintiffs' Motion for Preliminary Injunction hearing. ([Filing No. 11]().) The Plaintiffs also filed a Motion to Hold Defendants in Contempt for Violating the TRO. ([Filing No. 17]().) As stated earlier, Defendants

4

failed to file a timely response, instead they have filed an Emergency Motion for Extension of Time to File Response. (Filing No. 20).

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 65, a TRO "expires at the time after entry--not to exceed 14 days-- that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Fed. R. Civ. P. 65(b)(2). The reasons for an extension must be entered in the record. *Id*. Where parties to a TRO have notice and an opportunity to be heard, the only question presented is whether there is good cause to extend the TRO. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Patinkin,* No. 91 C 2324, 1991 WL 83163, at *3 (N.D. Ill. May 9, 1991). A TRO is generally limited to one extension and a maximum duration of 28 days. *H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 844 (7th Cir. 2012). However, "where a court expressly extends a TRO issued after notice and a hearing beyond the [28 day] statutory limit, the TRO does not cease to exist but instead becomes an enforceable preliminary injunction subject to appellate review. *Id*. at 844-45 (citing *Sampson v. Murray,* 415 U.S. 61, 86–88 (1974).

## III. DISCUSSION

Plaintiffs request the Court to extend the TRO and hold Defendants in contempt, asserting that Defendants violated the TRO and continue to irreparably harm Plaintiffs. As a preliminary matter, Plaintiffs' Motion to hold Defendants in contempt (Filing No. 17) is referred to Magistrate Judge Dinsmore. The parties should establish a briefing schedule regarding the contempt Motion when meeting with Judge Dinsmore on November 3, 2016.

Regarding the TRO, Plaintiffs argue that the facts and circumstances remain the same, and if Defendants are permitted to publish and distribute their versions of the magazines, Plaintiffs will

suffer harm. "Good cause" may be established by showing that the grounds for originally granting the TRO continue to exist. *Patinkin*, 1991 WL 83163, at *3 (citing Merrill Lynch v. Bradley, 756 F.2d 1048 (4th Cir. 1985) (holding that the continuing possibility that the defendant will solicit plaintiff's clients justifies extending the TRO).

In the state court order granting motion for temporary restraining order ([Filing No. 14](#)), Defendants were enjoined from distributing October issues, and any subsequent issues of the magazines, using marks that are the same as or confusingly similar to TownePost's Licensed Marks or common law marks in any manner, as well as, interfering with the contracts between TownePost and its advertisers, among other things. Plaintiffs present evidence that Defendants violated the TRO by continuing to use the names "Carmel Magazine" and "Zionsville Magazine" on their websites with links to magazines that were published by TownePost and that contains TownePost's Licensed Marks. ([Filing No. 19-7](#); [Filing No. 19-6](#).) The Plaintiffs also present evidence that Defendants plan to distribute November issues of the magazines once the TRO expires on October 31. Just days after the TRO hearing, on October 19, 2016, Neil Lucas sent email solicitations to TownePost advertisers, requesting that they advertise in Defendants' Magazine. ([Filing No. 19-8](#).) Plaintiffs assert that because of Defendants' solicitations and other actions, numerous advertisers and customers are confused, leading several to withdraw their advertisements in Plaintiffs' magazines. ([Filing No. 19-9](#).)

To date, Defendants have not objected to the Motion to Extend the Temporary Restraining Order. Defendants' counsel, Mr. Davis, failed to file a Response Brief, despite an explicit order directing Defendants to file a response by October 31 before 10:00 a.m. Defendants, instead, filed the motion requesting an extension of time to file a Response Brief, consenting to the TRO being extended until November 1. ([Filing No. 20](#).) Defendants counsel stated only that Defendants

6

calendared the deadline wrong for the deadline to file a response to the TRO Extension, which was set for October 31, 2016, (the "Response Deadline") but failed to see the "before 10:00 a.m." portion of the Order.

In the State Court record, Mr. Davis consented to the $24,000 bond imposed on Plaintiffs, stating that it was "a fair amount", and requested only "that if the [preliminary injunction] decision is not rendered in enough time for our December issue that [Plaintiffs] be required to post additional amount for a bond." (Filing No. 13-3 at 69.) A TRO may be extended for good cause or for a period the adverse party consents to. Fed. R. Civ. P. 65(b)(2). Because Defendants' counsel has not objected to an extension of the TRO, has consented to an extension until November 1, 2016 and indicated in the state court record that a TRO is acceptable until closer to publication of a December 1st issue, the Court finds good cause to temporarily extend the TRO until November 14, 2016 at 3:00 p.m. This extended deadline will give Defendants time to file a Response Brief, which counsel indicated would be filed on October 31, 2016 and allow the parties to meet with the magistrate judge as scheduled on November 3, 2016.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Extend the Temporary Restraining Order and the TRO is extended until **November 14 at 3:00 pm**. (Filing No. 11.) The Court **GRANTS in part and DENIES in part** Defendants' Motion for Extension of Time to Respond. (Filing No. 20). The motion is granted in that Defendants have until the end of the day on October 31, 2016 to file their response, and denied in that the Court is extending the TRO until November 14, 2016.

Further, the Court refers Plaintiffs' Motion to Hold Defendants in Contempt (Filing No. 17) to Magistrate Judge Dinsmore to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**SO ORDERED.**

Date: 10/31/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

P. Adam Davis
DAVIS & SARBINOFF LLC
efiling@d-slaw.com

Stephanie Maris
LAW OFFICE OF JOSH F BROWN
stephanie@indyfranchiselaw.com

Josh F. Brown
LAW OFFICES OF JOSH F. BROWN, LLC
josh@indyfranchiselaw.com

Jonathan D. Mattingly
MATTINGLY BURKE COHEN & BIEDERMAN LLP
Jon.mattingly@mbcblaw.com