UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRITT INTERACTIVE LLC, and TOWNEPOST NETWORK INC., | )<br>)<br>) |
| Plaintiffs and Counterclaim Defendants, | )<br>) |
| v. | ) Case No. 1:16-cv-02884-TWP-DML<br>) |
| A3 MEDIA LLC, COLLECTIVE PUBLISHING LLC, YELENA LUCAS, NEIL LUCAS, JANELLE MORRISON, CHILLY PANDA MEDIA, LLC, DANN VELDKAMP, and JODY VELDKAMP, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants, Counterclaimants and Third Party Plaintiffs, | )<br>)<br>) |
| TOM BRITT, JEANNE BRITT, JOSHUA BROWN, and TONI FOLZENLOGEL, | )<br>)<br>) |
| Third Party Defendants. | ) |

## ENTRY ON MOTIONS TO DISMISS

Before the Court is a Motion to Dismiss filed by Third-Party Defendant Joshua Brown ("Brown") ([Filing No. 132](#)), and a Motion for Partial Dismissal filed by Counterclaim Defendants Britt Interactive, LLC ("Britt Interactive") and TownePost Network, Inc. ("TownePost"), as well as Third-Party Defendants Tom Britt ("Mr. Britt") and Jeanne Britt (collectively, the "Britt Parties"). ([Filing No. 134](#).) Counterclaimants A3 Media LLC ("A3 Media"), Collective Publishing, LLC ("Collective Publishing"), Neil Lucas ("Mr. Lucas"), Yelena Lucas ("Mrs. Lucas"), Chilly Panda Media, LLC ("Chilly Panda"), Dann Veldkamp, Jody Veldkamp, and Janelle Morrison (collectively, "the Counterclaimants"), oppose the Motion to Dismiss and the Motion for Partial Dismissal. ([Filing No. 157](#).) For the following reasons, the Court **GRANTS in part and DENIES in part** the respective motions to dismiss.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Counterclaim and Third-Party Complaint and draws all inferences in favor of the Counterclaimants. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Mr. Britt founded Britt Interactive in 2003 and published a monthly newsletter and magazine, known as Geist Community Newsletter. ([Filing No. 62 at 42](Filing No. 62 at 42).) Shortly after launching Geist Community Newsletter, Britt Interactive sold licenses to its methods for producing the Geist Community Newsletter, as well as specific community-based domain names to allow third parties to create new community-based newsletters. *Id.* at 42-43. On December 21, 2012 and October 17, 2013, respectively, Britt Interactive entered into a License Agreement with A3 Media, operated by Mr. and Mrs. Lucas, to produce monthly local publications in Zionsville and Carmel, Indiana. *Id.* at 43. The magazines were known as "Zionsville Community Newsletter" and "Carmel Community Newsletter" (collectively, "the Newsletters"). *Id.*

Pursuant to the License Agreements, Britt Interactive retained ownership of the Newsletters, as well as their website domains, "atZionsville.com" and "atCarmel.com." *Id.* at 48. Britt Interactive also retained the naming rights of the Newsletters and domains, as well as ownership of the business processes, customer data, intellectual property and design. *Id.* at 47-48. Britt Interactive was, however, required to provide management services to A3 Media, including services related to vendor management, invoices, accounts receivable, accounts payable, accounting, income statements, and banking, in exchange for a monthly management fee. *Id.* at 47-49.

The License Agreements also provided that A3 Media owns: (1) all advertising sales; (2) all account receivables resulting from advertising sales; (3) all content created for the Newsletters; (4) all advertisements produced in the Newsletters; (5) all stories published in the Newsletters; (6) all videos created for the Newsletters; (7) all final digital files of the Newsletters' content; (8) the list of advertisers for the Newsletters; and (9) all liabilities associated with the Newsletters (the "A3 Media Property"). *Id.* at 46-47. A3 Media further acquired a license to market the Newsletters through Britt Interactive's network and the License Agreements did not prohibit A3 Media from publishing or marketing any other publications, nor did it contain any covenants not to compete. *Id.* at 48-49.

In 2014, Mr. Britt established TownePost, which acquired all of Britt Interactive's intellectual property and License Agreements. (*See* Filing No. 3-2 at 5-6, 52.)[1] On February 1, 2014, Britt Interactive and TownePost informed Britt Interactive's Licensees that customers and Licensees should submit fees and payments to TownePost. *Id*. On July 21, 2015, TownePost informed the Licensees that the names and logos of the publications would change from "newsletter" to "magazine." *Id*. at 35. A3 Media's magazines changed from "Zionsville Community Newsletter" and "Carmel Community Newsletter" to "Zionsville Magazine" and "Carmel Magazine" (collectively, "the Magazines"). *Id*. On July 11, 2016, TownePost also informed A3 Media, as well as other Licensees, that it was converting to the franchise model, and offered to sale franchises as opposed to licenses. (Filing No. 32-4 at 1.) TownePost notified its licensees, including A3 Media, that if they chose not to become franchisees, TownePost would exercise its right to terminate their licensing agreements. *Id*.

---

[1] Counterclaimants incorporated by reference Filing No. 3-2 and their Appendix of Exhibits at Filing No. 32 into their Counterclaim and Third Party Complaint. (*See* Filing No. 62 at 43.)

On August 10, 2016, TownePost sent a follow-up letter to undecided licensees, including A3 Media, asking them to inform TownePost of their franchising decisions by September 1, 2016. *Id*. On August 15, 2016, despite TownePost's request that its licensees respond to the franchise option by September 1, 2016, Brown, on behalf of TownePost, sent a letter to Chilly Panda terminating TownePost's License Agreements with Chilly Panda. ([Filing No. 32-5](#).) In the termination letter, TownePost claimed certain rights and proprietary interests. *Id*.

Thereafter, on August 22, 2016, A3 Media learned that TownePost continued to collect advertising income on A3 Media's behalf, as required by the License Agreements, but stopped making weekly transfers of these funds to A3 Media. ([Filing No. 32-7](#).) As a result, A3 Media began invoicing its advertising customers directly in order to protect its advertising income. ([Filing No. 62 at 56](#).) On September 13, 2016, A3 Media informed TownePost that it would not become a franchisee, effectively terminating the License Agreements. (Filing No. 32-8.) Despite termination of the License Agreements, Britt Interactive published editions of the Magazines on its own in early October 2016. ([Filing No. 62 at 57](#).) Britt Interactive also represented to A3 Media's advertising customers that Britt Interactive owned the Magazines, as well as all customer relationships, accounts receivables, and income derived from the Magazines. *Id.*

On September 23, 2016, Britt Interactive and TownePost filed a Complaint and Motion for Preliminary Injunction in the Hamilton Superior Court 3 ("Superior Court") against A3 Media, Mr. and Mrs. Lucas, and Collective Publishing, asserting tortious interference with contracts, tortious interference with business relationships, conversion, trademark infringement, trademark infringement pursuant to the Lanham Act, violations of Indiana trademark act, and breach of contract. ([Filing No. 3-2 at 13-22](#); [Filing No. 3-3 at 3-7](#).) Thereafter, on October 11, 2016, Britt Interactive and TownePost filed an Amended Complaint and a Temporary Restraining Order

4

("TRO") Motion. ([Filing No. 3-4 at 7-42](); [Filing No. 3-3 at 43-50.]()) On October 17, 2016, the Superior Court held a hearing and granted the TRO, restraining and enjoining Counterclaimants from distributing October issues, and any subsequent issues of the Magazines, among other things. ([Filing No. 14.]())

On October 21, 2016, Counterclaimants removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. ([Filing No. 3]().) In response to Britt Interactive's and TownePost's Second Amended Complaint ([Filing No. 23]()), Counterclaimants filed their Answer, Counterclaim, and Third-Party Complaint, asserting trademark infringement under Indiana and federal law; copyright infringement; unfair competition; civil remedies under the Indiana Crime Victims Act; breach of contract; tortious interference with business relationships; breach of fiduciary duties; defamation; fraud; franchise fraud; constructive fraud; violations of the Federal Stored Communications Act; and abuse of process. ([Filing No. 62]().)

Brown seeks to dismiss the Third-Party Complaint, arguing the tortious interference, defamation, and franchise fraud claims are without merit and fails to state a ground upon which relief can be granted. ([Filing No. 132]().) The Britt Parties also move the Court to partially dismiss the Counterclaimants' claims and Third-Party Complaint for the reasons alleged by Brown. ([Filing No. 134]().) In response to the Motions to Dismiss, the Counterclaimants argue that they have pled sufficient facts to support their claims for tortious interference with business relationships, defamation, and franchise fraud. ([Filing No. 157]().)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal if the complaint fails to set forth a claim upon which relief can be granted. "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Accordingly, when analyzing a Rule 12(b)(6) motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

At a minimum, the complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests; and the factual allegations must raise a right to relief above the speculative level. *See Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009); *Tamayo*, 526 F.3d at 1081, 1083. While a complaint need not include detailed factual allegations, a plaintiff has the obligation to provide the factual grounds supporting his entitlement to relief; and neither bare legal conclusions nor a formulaic recitation of the elements of a cause of action will suffice in meeting this obligation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 … demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Therefore, a complaint must generally contain enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570; *Tamayo*, 526 F.3d at 1083 ("[a] plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible rather than merely speculative, that he is entitled to relief").

## III. DISCUSSION

Both Brown and the Britt Parties seek to dismiss the Counterclaimants' tortious interference with business relationships, defamation, and franchise fraud claims, arguing the Counterclaimants failed to allege sufficient facts to support these claims. Brown and the Britt Parties also assert that Indiana's Anti-SLAPP Act is an affirmative defense to the Counterclaimants' defamation and tortious interference with business relationships allegations. Brown further contends that he is entitled to immunity against the tortious interference with business relationships and defamation claims because any actions that he took were made within the scope of his attorney-client relationship with Britt Interactive and in connection with this judicial proceeding.

### A. Attorney Immunity

As an initial matter, Brown argues he is immune from claims of tortious interference with business relationships and defamation because he was acting within the scope of his legal representation of Britt Interactive.

Under Indiana law, an attorney acting in his representative capacity cannot be held liable for defamation or similar torts, such as tortious interference with a business relationship, as a result of his actions in the course or context of a judicial proceeding. *See Heckler & Koch, Inc. v. German Sport Guns GmbH*, 71 F. Supp. 3d 866, 894-95 (S.D. Ind. 2014); *see also*, *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 249 (Ind. Ct. App. 2013) (absolute privilege against defamation claims for relevant statements made within the course of a judicial proceeding may also apply to "[o]ther torts related to defamation," including tortious interference with a business relationship); *Watson Rural Water Co., Inc. v. Ind. Cities Water Corp.*, 540 N.E.2d 131, 139 (Ind. Ct. App. 1989) (stating

that representations "made within the context of litigation … are privileged and will not serve as a basis for liability").

Viewing the allegations in the Counterclaim and Third-Party Complaint in a light most favorable to the Counterclaimants, the Court finds attorney immunity does not apply because the actions giving rise to the claims against Brown took place prior to the start of litigation, and were not made in the context of litigation. *See Estate of Mayer*, 998 N.E.2d at 247 ("Indiana law has long recognized an absolute privilege that protects all relevant statements *made in the course of* a judicial proceeding, regardless of the truth or motive behind the statements") (emphasis added). Accordingly, Brown's Motion to Dismiss on this issue is **denied**.

B.  **Tortious Interference with Business Relationships**

Both Brown and the Britt Parties move to dismiss the Counterclaimants' tortious interference with business relationships claim. To establish a claim for tortious interference with a business relationship under Indiana law, one must demonstrate: "(1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional inference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship." *Pierce v. Zoetis, Inc*., 818 F.3d 274, 278 (7th Cir. 2016) (internal quotations omitted). A party bringing such a claim must also "prove that the defendant committed an illegal act to achieve her end." *Id*.

The Counterclaimants allege Brown and the Britt Parties "unjustifiably interfered" with A3 Media's relationships with its advertisers and vendors, causing A3 Media damage, by: (1) "failing to act as a servicing agent on behalf of A3 Media;" (2) "publishing the Magazines without A3 Media's consent;" (3) "using the A3 Media Property without consent;" (4) failing to transfer advertising income to A3 Media; (5) assigning the Agreements, or otherwise transferring A3

Media's rights, to TownePost; (6) "misrepresenting Britt Interactive's … relationship with A3 Media and status with regard to A3 Media's Property to A3 Media's Advertising Customers (as well as the public)"; (7) "instituting this litigation"; and (8) carrying out a scheme to convert its licensing arrangements to franchises. ([Filing No. 62 at 63-64](Filing No. 62 at 63-64).)

The Court concludes that the Counterclaimants' allegations fail to address whether Brown and the Britt Parties acted intentionally when interfering with A3 Media's business relationships, as required by Indiana law. *See Pierce*, 818 F.3d at 278 (noting a plaintiff must prove "defendant's intentional interference with" a business relationship). The Court also finds that the Counterclaimants have presented no facts establishing that Brown's and the Britt Parties' actions were illegal. *See id.* (under Indiana law, a "plaintiff must prove that the defendant committed an illegal act" in order to prove tortious interference with a business relationship). Accordingly, the Court **grants** Brown's and the Britt Parties' Motions to dismiss the claim for tortious interference with business relationships.

**C.** **Defamation**

Brown and the Britt Parties move to dismiss the Counterclaimants' defamation claim. A defamatory statement "is one that tends to harm a person's reputation by lowering the person in the community's estimation or by deterring third parties from dealing or associating with the person." *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007) (internal quotations omitted). *See also*, *Lovings v. Thomas*, 805 N.E.2d 442, 447 (Ind. Ct. App. 2004) ("Defamation is that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or excite derogatory feelings or opinions about the plaintiff."). To maintain an action for defamation under Indiana law, a "plaintiff must demonstrate (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages." *Kelley*, 865 N.E.2d at 596-97.

9

To be held liable for defamation, a defendant must make a false statement of fact. *See Journal-Gazette Co., Inc. v. Bandido's, Inc.*, 712 N.E.2d 446, 457 (Ind. 1999) (citing *Heeb v. Smith*, 613 N.E.2d 416, 420 (Ind. Ct. App. 1993)). However, while truth is a defense to defamation, the literal truth is not required. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991); *Heeb*, 613 N.E.2d at 420. A statement is sufficiently true if it has a "substantial basis in the truth" and if the Agist@ or Asting@ of the statement is true. *Brandom*, 97 N.E.2d at 390-91; *Heeb*, 613 N.E.2d at 421. "The test for determining whether a statement is substantially true is whether any inaccuracies caused the statement to produce a different effect on the audience than would have been produced had the literal truth been spoken." *Heeb*, 613 N.E.2d at 421. *See also*, *Bandido's*, 712 N.E.2d at 457.

While defamation claims do not require parties to meet a heightened pleading standard, "a plaintiff must still set out the operative facts," including the allegedly defamatory statement, to properly assert a claim for defamation. *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006). Without the statement serving as the basis for a defamation claim, "the court cannot actually determine if the statement is legally defamatory," and "[t]he defendant is placed on an unfair footing since the absence of the statement denies her the opportunity to prepare appropriate defenses." *Id*. (internal citations omitted). While the pleading does not need to incorporate the literal statement, a party asserting a defamation claim must provide some context as to when and how the allegedly defamatory statement was made "to allow the defendant to form an appropriate response." *Farr v. St. Francis Hosp. & Health Ctr.*, 1:06-cv-779-SEB-JMS, 2007 WL 2793396, at *4 (S.D. Ind. Sept. 26, 2007). *See also*, *Cowgill v. Whitewater Publ'g*, No. 1:08-cv-0258-JMS-DFH, 2008 WL 2266367, at *1 (S.D. Ind. May 29, 2008).

The Counterclaimants allege that Brown and the Britt Parties defamed them by representing to A3 Media's advertisers and vendors, as well as other third parties that: (1) Britt Interactive owned the A3 Media Property; (2) Mr. and Mrs. Lucas were dishonest about their ownership of the A3 Media Property; (3) Mr. and Mrs. Lucas attempted to steal or convert the A3 Media Property; and (4) Mr. and Mrs. Lucas engaged in deceptive business practices with their advertisers and the general public. (Filing No. 62 at 65.)

The Court finds that the Counterclaimants failed to state "the number of speakers or statements made, to whom the statements were made, or when and in what context the statements were made." *See Farr*, 2007 WL 2793396 at *4. Without providing the literal statements or sufficient context for the statements, the Counterclaimants' defamation claim is insufficiently pled and Brown's and the Britt Parties' motions to dismiss this claim is **granted.**

D. **Franchise Fraud**

Brown and the Britt Parties lastly move the Court to dismiss the Counterclaimants' franchise fraud claim. Under the Indiana Franchise Disclosure Act ("IFDA"), "[i]t is unlawful for any person in connection with the offer, sale or purchase of any franchise …, directly or indirectly: (1) to employ any device, scheme or artifice to defraud…" Ind. Code § 23-2-2.5-27. The IFDA defines "fraud" and "deceit" as:

> any misrepresentation in any manner of a material fact, any promise or representation or prediction as to the future not made honestly or in good faith, or the failure or omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading.

Ind. Code § 23-2-2.5-1(f). While the Counterclaimants accurately state that a private right of action exists to assert a claim of franchise fraud (Filing No. 157 at 9), a party asserting a claim of franchise fraud "must nevertheless plead the facts and circumstances alleged to constitute fraud,

11

deceit or misrepresentation with at least the same degree of particularity and detail as would be necessary to maintain an action for common law fraud." *Cont'l Basketball Ass'n, Inc. v. Ellenstein Enter., Inc.*, 669 N.E.2d 134, 137 (Ind. 1996).

Pursuant to Federal Rule of Civil Procedure 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet the particularity standard, a party claiming fraud "must do more pre-complaint investigation to assure that the claim is responsible and supported," and "must provide 'the who, what, when, where, and how'" of the allegedly fraudulent activity. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citing *U.S. ex rel. Gross v. AIDS Research Alliance-Chi.*, 415 F.3d 601, 605 (7th Cir. 2005)). Stated otherwise, a party alleging fraud must "identify the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Wine & Canvas Dev., LLC v. Weisser*, 886 F. Supp. 2d 903, 944 (S.D. Ind. 2012) (internal quotations omitted).

The Counterclaimants have not pled their franchise fraud claim with sufficient particularity. While the Counterclaimants assert that Brown and the Britt Parties created and participated in a five-part "Franchise Conversion Scheme" through which they sought to convert their licensing arrangements to franchises ([Filing No. 62 at 52-53](Filing No. 62 at 52-53)), the Counterclaimants have not provided any factual allegations regarding who made a fraudulent misrepresentation, how the misrepresentation was made, the timing or setting of the misrepresentation, or the content of the misrepresentation. *See Weisser*, 886 F. Supp. 2d at 944. Accordingly, because the Counterclaimants have not met the heightened pleading requirements set forth in Rule 9(b), their franchise fraud claim under § 23-2-2.5-27 is insufficiently pled.

Furthermore, the Counterclaimants assert that Brown and the Britt Parties committed franchise fraud in violation of § 23-2-2.7-2 "by coercing and/or forcing [Mr. and Mrs. Lucas, A3 Media, and Collective Publishing] to accept services which are neither necessary to the operation of the Franchise, nor required by the Newsletter Agreements, or required by law" and "by attempting to coerce [Mr. and Mrs. Lucas, A3 Media, and Collective Publishing] to enter into an agreement with [the Britt Parties] by threatening to cancel their respective Newsletter Agreements." ([Filing No. 62 at 70](#).) The Court finds the Counterclaimants' assertion misplaced because § 23-2-2.7-2 describes unlawful practices by a "franchisor who has *entered into any franchise agreement* with a franchisee." *See* Ind. Code § 23-2-2.7-2 (emphasis added). Because the parties never formed a franchise agreement, Brown and the Britt Parties cannot be held liable under § 23-2-2.7-2. Accordingly, the motions to dismiss the Franchise Fraud claim are **granted**.

### E.     Indiana Anti-SLAPP Statute

In addition to arguing that the claims were insufficiently pled, Brown and the Britt Parties assert a defense under Indiana's Anti-SLAPP Act, Ind. Code §§ 34-7-7-1 *et seq*., for the Counterclaimants' tortious interference with business relationships and defamation claims. ([Filing No. 133 at 15](#); [Filing No. 135 at 10](#).)

Indiana's Anti-SLAPP Act provides a defense to "meritless suits aimed at silencing a plaintiff=s opponents, or at least diverting their resources." *Brandom v. Coupled Prod., LLC*, 975 N.E.2d 382, 385 (Ind. Ct. App. 2012) (quoting *Hamilton v. Prewett*, 860 N.E.2d 1234, 1241-42 (Ind. Ct. App. 2007)). The Anti-SLAPP statute "is intended to reduce the number of lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *Brandom*, 975 N.E.2d at 385. The Indiana Anti-SLAPP Act provides:

> It is a defense in a civil action against a person[2] that the act or omission complained of is: (1) an act or omission of that person in furtherance of the person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue; and (2) an act or omission taken in good faith and with a reasonable basis in law and fact.

Ind. Code § 34-7-7-5.

The Anti-SLAPP Act further states that "the person who files a motion to dismiss must state with specificity the public issue . . . that prompted the act in furtherance of the person's right of … free speech under the Constitution of the United States or the Constitution of the State of Indiana." Ind. Code § 34-7-7-9(b). The statute also requires that the Court base its decision on "facts contained in the pleadings and affidavits filed and discovered under the expedited proceeding." Ind. Code § 34-7-7-9(c). A court shall grant an anti-SLAPP motion to dismiss if the party filing the motion to dismiss "has proven, by a preponderance of the evidence, that the act upon which the claim is based is a lawful act in furtherance of the person's right of . . . free speech under the Constitution of the United States or the Constitution of the State of Indiana." Ind. Code § 34-7-7-9(d).

The Indiana Anti-SLAPP Act does not apply to the Counterclaimants' tortious inference with business relationships and defamation claims because Brown and the Britt Parties have not adequately demonstrated that the Counterclaimants' allegations constitute matters of public interest. While the Magazines may be of general interest to members of their respective communities, statements and lawsuits relating to the ownership of the Magazines and the intellectual property associated with the Magazines are not matters of public interest. *Cf. Kadambi v. Express Scripts, Inc.*, 86 F. Supp. 3d 900, 908-09 (N.D. Ind. 2015) (finding an individual

---

[2] The Act defines "person" as either an individual or any other legal entity. Ind. Code § 34-7-7-4.

explanations regarding pharmaceutical services were not matters of public interest because the individual explanations are much narrower in scope than pharmaceutical services generally, which are matters of public interest). Accordingly, because these claims are not related to matters of public interest, the Indiana Anti-SLAPP Act is not as a defense to the Counterclaimants' tortious interference with business relationships or defamation claims.

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS in part and DENIES in part** Joshua Brown's Motion to Dismiss ([Filing No. 132](Filing No. 132)), and **GRANTS in part and DENIES in part** the Britt Parties' Motion for Partial Dismissal ([Filing No. 134](Filing No. 134)). The Motions to Dismiss as they relate to the Counterclaimants' claims of tortious interference with business relationships, defamation, and franchise fraud under Ind. Code § 23-2-2.5-27 are **dismissed without prejudice**. However, the Motions to Dismiss with regard to the Counterclaimants' franchise fraud claim under Ind. Code § 23-2-2.7-2 are **dismissed with prejudice**. Furthermore, the Motions to Dismiss in relation to Brown's immunity defense and the Britt Parties' anti-SLAPP defenses are **DENIED**. The Counterclaimants are granted leave of **twenty-one days (21)** from the date of this Entry within which to file an Amended Counterclaim and Third-Party Complaint, if any.

**SO ORDERED.**

Date: 5/16/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

E. Brenda Kpotufe
MATTINGLY BURKE COHEN & BIEDERMAN LLP
brenda.kpotufe@mbcblaw.com

Jonathan D. Mattingly
MATTINGLY BURKE COHEN & BIEDERMAN LLP
jon.mattingly@mbcblaw.com

Stephanie Maris
LAW OFFICE OF JOSH F. BROWN
stephanie@indyfranchiselaw.com

Joshua F. Brown
LAW OFFICES OF JOSH F. BROWN, LLC
josh@indyfranchiselaw.com

Ronald E. Elberger
BOSE MCKINNEY & EVANS, LLP
relberger@boselaw.com

P. Adam Davis
DAVIS & SARBINOFF LLC
efiling@d-slaw.com

Matthew M. Cree
LAW OFFICE OF MATTHEW M. CREE, LLC
matt@creelawoffice.com

Patrick James Olmstead, Jr.
PATRICK OLMSTEAD LAW, LLC
polmstead@patrickolmsteadlaw.com