# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| BRITT INTERACTIVE LLC, and TOWNEPOST NETWORK INC., | )<br>)<br>) |
| Plaintiffs and Counterclaim Defendants, | )<br>) |
| v. | ) Case No. 1:16-cv-02884-TWP-DML<br>) |
| A3 MEDIA LLC, COLLECTIVE PUBLISHING LLC, YELENA LUCAS, NEIL LUCAS, JANELLE MORRISON, CHILLY PANDA MEDIA, LLC, DANN VELDKAMP, and JODY VELDKAMP, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants, Counterclaimants and Third Party Plaintiffs, | )<br>)<br>) |
| TOM BRITT, JEANNE BRITT, JOSHUA BROWN, and TONI FOLZENLOGEL, | )<br>)<br>) |
| Third Party Defendants. | ) |

**<u>ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>**

This matter is before the Court on Plaintiffs', Britt Interactive LLC and Townepost, Inc. (collectively, the "Plaintiffs"), Motion to Hold Defendants in Contempt of Temporary Restraining Order ([Filing No. 17](#)) (the "Contempt Motion"). On July 28, 2017, the Magistrate Judge issued a Report and Recommendation, advising the Court to grant in part and deny in part the Contempt Motion ([Filing No. 251](#)). Defendants, A3 Media, LLC, Collective Publishing, LLC, Yelena Lucas, and Neil Lucas (collectively, the "Lucas Parties"), objected to the Magistrate Judge's Report and Recommendation, asserting that (1) the language of the temporary restraining order ("TRO") at issue is too ambiguous to hold the Lucas Parties in contempt; (2) the Lucas Parties should not be held in contempt for violations of the TRO before they knew it was in effect; and (3) a civil contempt remedy is no longer necessary to coerce compliance with the TRO ([Filing No. 256](#)). For

the following reasons, the Court **OVERRULES** the Lucas Parties' Objections and **ADOPTS** the Magistrate Judge's Report and Recommendation to grant in part and deny in part the Contempt Motion.

## I. BACKGROUND

The facts of this case are set forth in the Magistrate Judge's Report and Recommendation which the Court adopts, so only a brief synopsis of the factual background is stated in this Order. Plaintiffs initiated this action against the Lucas Parties on September 23, 2016 in Hamilton County, Indiana Superior Court and alleged several claims, including breach of contract, tortious interference with contracts, and trademark infringement ([Filing No. 3-2](#)). On October 11, 2016, Plaintiffs filed a Motion for Temporary Restraining Order in the Hamilton County Superior Court, and Judge William J. Hughes held a hearing on Plaintiffs' motion on October 17, 2016 ([Filing No. 18 at 3](#)). At the conclusion of the TRO hearing, Judge Hughes determined that Plaintiffs were entitled to a TRO restricting the Lucas Parties' use of the "Carmel Magazine" and "Zionsville Magazine" marks (the "Marks") and that such a TRO would go into effect as soon as Plaintiffs were able to post a $24,000.00 bond ([Filing No. 18 at 6-7](#)).

Despite Judge Hughes' determination that Plaintiffs were entitled to a TRO against the Lucas Parties, on October 17, 2016, the Lucas Parties continued to reference and assert ownership of the Marks in emails to advertisers and on their social media platforms after October 17, 2016 ([Filing No. 18 at 7-17](#)). Specifically, on October 18, 2016, the Lucas Parties sent invoices to advertisers in connection with upcoming issues of "Carmel Magazine" and "Zionsville Magazine" ([Filing No. 19-11](#)), and sent several additional emails to advertisers between 1:18 p.m. and 3:19 p.m. on October 19, 2016 to collect and negotiate fees for advertisements in "Carmel Magazine" and "Zionsville Magazine" ([Filing No. 111-1](#); [Filing No. 111-2](#); [Filing No. 111-3](#)).

2

The Plaintiffs posted bond on October 19, 2016, and the TRO went into effect at 3:55 p.m. on October 19, 2016 ([Filing No. 19-5 at 2-3](#)). In his order granting the TRO, Judge Hughes stated that "Plaintiffs will suffer immediate and irreparable harm if [the Lucas Parties and Lena Lucas] distribute their October issues, or any subsequent issues, of the "Zionsville Magazine" and/or the "Carmel Magazine" and such distribution will cause further confusion among customers, advertisers, and the general public" ([Filing No. 19-5 at 2](#)). Judge Hughes' TRO order also temporarily restrained and enjoined the Lucas Parties and Lena Lucas from the following:

> (a) distributing October issues, or any subsequent issues, of the "Zionsville Magazine" and/or the "Carmel Magazine"; (b) infringing TownePost's Licensed Marks in violation and contravention of the Lanham Act"; (c) infringing TownePost's common law marks in violation and contravention of the Indiana Trademark Act; (d) using marks that are the same as or confusingly similar to TownePost's Licensed Marks or common law marks in any manner including but not limited to in a print magazine, newsletter, or online medium; and (e) interfering with the contracts between TownePost and its advertisers.

([Filing No. 19-5 at 3](#)). At 4:01 p.m. on October 16, 2016, Judge Hughes sent an email to counsel for Plaintiffs and the Lucas Parties, which included his order granting the TRO. ([Filing No. 53 at 8](#).) Counsel for the Lucas Parties forwarded Judge Hughes' email to the Lucas Parties at 4:41 p.m. on October 19, 2016 ([Filing No. 53 at 8](#)).

The Lucas Parties continued to send emails referencing the Marks after 3:55 p.m. on October 19, 2016. While they did not yet know the TRO was in effect, the Lucas Parties sent advertisers emails regarding a "limited time" offer for ads in "Carmel Magazine" and "Zionsville Magazine" at 4:06 p.m. and 4:08 p.m. on October 19, 2016 (Filing No 19-8; [Filing No. 111-6](#)). The Lucas Parties also continued to send emails to advertisers using the Marks between 5:27 p.m. on October 19, 2016 and 9:55 a.m. on October 24, 2016 ([Filing No. 111-4](#); [Filing No. 111-5](#); [Filing No. 111-7](#); [Filing No. 111-8](#)). Furthermore, the Lucas Parties continued to represent ownership of

the Marks and promote their upcoming issues of "Carmel Magazine" and "Zionsville Magazine" on Twitter until October 24, 2016 (Filing No. 19-6).

On October, 24, 2016, the Lucas Parties removed the litigation to this Court (Filing No. 3). Based on the Lucas Parties' actions after the TRO went into effect, Plaintiffs filed the Contempt Motion on October 31, 2016, requesting that the Court award them their attorney's fees associated with their investigation of the Lucas Parties' TRO violations (Filing No. 17). This Court also extended the TRO until November 14, 2016 at 3:00 p.m. that same day (Filing No. 22).

On July 28, 2017, the Magistrate Judge issued a Report and Recommendation, in which he recommended that the Court grant in part and deny in part the Contempt Motion (Filing No. 251). Specifically, the Magistrate Judge determined that while some of the alleged TRO violations actually occurred before the TRO went into effect and cannot be the basis for contempt, the Lucas Parties did violate paragraph (d) of the TRO by using the Marks in emails to advertisers and through social media after the TRO became effective at 3:55 p.m. on October 19, 2016 (Filing No. 251 at 10-18). Although the Lucas Parties argued that they were entitled to some leeway for the emails they sent on October 19, 2016 before learning the TRO was in effect, the Magistrate Judge found that the Lucas Parties were not entitled to any such leeway because they had sufficient notice from the October 17, 2016 hearing that the TRO would go into effect as soon as Plaintiffs posted bond and because they still continued to violate the TRO even after knowing it was in effect (Filing No. 251 at 12-20). Furthermore, the Magistrate Judge determined that Plaintiffs were entitled to recover their reasonable attorney's fees associated with bringing the Contempt Motion and that Plaintiffs would be able to seek any actual damages resulting from the Lucas Parties' contempt at a later date (Filing No. 251 at 20-22).

4

The Lucas Parties objected to the Magistrate Judge's Report and Recommendation on August 11, 2017 (Filing No. 256). In their Objections, the Lucas Parties argue that the language of paragraph (d) of the TRO is too ambiguous to support a finding of civil contempt and that they should not be liable for any violations of the TRO before they knew it was in effect (Filing No. 256 at 3-4). The Lucas Parties further contend that no sanction is necessary to coerce compliance with the TRO because (1) Plaintiffs failed to show that all of their alleged violations occurred while the TRO was in effect; (2) they have fully complied with the TRO since October 24, 2016; and (3) any actual violations of the TRO were minimal (Filing No. 256 at 4-5; Filing No. 259 at 3-4). Plaintiffs oppose the Lucas Parties' objections, asserting that the language of the TRO is unambiguous and that the evidence of record clearly establishes that the Lucas Parties violated the TRO after it went into effect at 3:55 p.m. on October 19, 2016 (Filing No. 258).

## II. LEGAL STANDARD

### A. Magistrate Judge's Review of Non-Dispositive Motions

A district court may refer for decision a non-dispositive pretrial motion to a magistrate judge under Federal Rule of Civil Procedure 72(a). When reviewing an objection or appeal of a magistrate judge's decision on a non-dispositive pretrial motion, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The clear error standard is highly differential, allowing a district court to overturn the magistrate judge's ruling only when it "is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Ind. Airport Auth. v.*

*Travelers Prop. Cas. Co. of Am.*, No. 1:13-cv-01316-TWP-MPB, 2017 WL 5494047, at *1 (S.D. Ind. Nov. 16, 2017).

**B.     Civil Contempt**

The decision to enter a finding of civil contempt is within a district court's discretion. *Bailey v. Robb*, 567 F.3d 930, 933 (7th Cir. 2009). In order for the Court to find contempt,

> the moving party must establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply.

*U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010); *see also*, *Ohr ex rel. Nat'l Labor Relations Bd. v. Latino Exp., Inc.*, 776 F.3d 469, 474 (7th Cir. 2015). A violation of a court order need not be "willful" for the Court to find a party in contempt; instead, a party may be held in contempt "if that party has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Bailey*, 567 F.3d at 935 (internal quotations omitted).

"Courts have broad discretion to fashion contempt remedies and the particular remedy chosen should be 'based on the nature of the harm and the probable effect of alternative sanctions.'" *F.T.C. v. Trudeau*, 579 F.3d 754, 771 (7th Cir. 2009) (quoting Connelly v. J.T. Ventures, 851 F.2d 930, 933 (7th Cir. 1988)). Civil contempt sanctions may serve both coercive and remedial purposes. *Bailey*, 567 F.3d at 933; *see also, Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008) ("Contempt is a unique civil sanction because its aim is both coercive and compensatory."). "A coercive sanction seeks to bring the contemnor's conduct into compliance with the court's order" and allows the contemnor the opportunity to purge its contempt. *Trudeau*, 579 F.3d at 777 (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828-29 (1994)). In contrast, "remedial sanctions compensate an injured

6

party for an opponent's past non-compliance." *Bailey*, 567 F.3d at 933; *see also*, *Trudeau*, 579 F.3d at 777.

### III. DISCUSSION

The Court concludes that the Magistrate Judge's decision to grant in part and deny in part the Contempt Motion was not clearly erroneous. The language of the TRO issued by Judge Hughes clearly stated that the Lucas Parties were restricted from any use of the Marks. While the TRO language does not specifically prohibit interaction or communication with advertisers, it does explicitly restrict "use" of the Marks "in any manner," which would encompass such interactions. Moreover, although it is clear that some of the Lucas Parties' alleged activities in violation of the TRO occurred before the TRO went in effect, it is also undisputed that the Lucas Parties used the Marks after the TRO became effective.

Furthermore, the Court agrees that the Lucas Parties are not entitled to any leeway for their uses of the Marks before they realized that the TRO was in effect. The Court need not find that the Lucas Parties willfully violated the TRO in order to find civil contempt; rather, it only needs to determine that the Lucas Parties were not reasonably diligent and energetic in attempting to comply with the TRO to support a finding of civil contempt. *See Bailey*, 567 F.3d at 935. Despite knowing that the TRO was going to be issued after the October 17, 2016 hearing to restrict their use of the Marks, the Lucas Parties still continued to use the Marks as long as possible and ran the risk of violating the TRO after it became effective. As such, the Lucas Parties failed to act with reasonable diligence to comply with the TRO. Even if the Court found that the Lucas Parties were entitled to some leeway for their actions before realizing that the TRO was in effect, the Lucas Parties would still be held in contempt of the TRO in light of their use the Marks in their communications with advertisers and on social media after learning the TRO was in effect.

Additionally, while the Lucas Parties believe that they should not be sanctioned for their "minimal" violations of the TRO, the Court disagrees. Courts have broad discretion to grant contempt remedies that may serve coercive or compensatory purposes. *See Trudeau*, 579 F.3d at 777; *Bailey*, 567 F.3d at 933. While the Lucas Parties assert that no sanction is necessary to coerce their compliance with the TRO, the remedies awarded by the Magistrate Judge to Plaintiffs were merely intended to compensate Plaintiffs for the Lucas Parties' non-compliance with the TRO and did not serve a coercive function. Therefore, the Court affirms the Magistrate Judge's conclusions within its Report and Recommendation.

### IV. CONCLUSION

For the reasons stated above, the Lucas Parties' Objections to the Magistrate Judge's Report and Recommendation are **OVERRULED**, and the Court **ADOPTS** the Magistrate Judge's Report and Recommendation to **grant in part** and **deny in part** the Plaintiffs' Contempt Motion. The Plaintiffs are entitled to recover their reasonable attorney's fees[1] associated with bringing the Contempt Motion and shall file a petition for fees within **fourteen (14) days** from the date of this Order. The Lucas Parties shall have **fourteen (14) days** thereafter to oppose the Plaintiffs' petition for fees, and Plaintiffs will have **seven (7) days** thereafter to submit a reply in support of their petition. If Plaintiffs discover sufficient evidence that they suffered actual damages as a result of the Lucas Parties' TRO violations, Plaintiffs may re-open their Contempt Motion to seek recovery of such damages.

**SO ORDERED.**

Date: 3/5/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

---

[1] As noted in the Magistrate Judge's Report and Recommendation, the Court will determine the amount of Plaintiffs' reasonable attorney's fees in light of the level of success Plaintiffs obtained in connection to their Contempt Motion. *See Linda T. ex rel. William A. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 708 (7th Cir. 2005) ("The most critical factor in determining the reasonableness of a fee award is the degree of success obtained.").

DISTRIBUTION:

Josh F. Brown
LAW OFFICES OF JOSH F. BROWN, LLC
josh@indyfranchiselaw.com

Matthew M. Cree
LAW OFFICE OF MATTHEW M. CREE,LLC
matt@creelawoffice.com

Danford Royce Due
DUE DOYLE FANNING & ALDERFER LLP
ddue@duedoyle.com

Ronald E. Elberger
BOSE MCKINNEY & EVANS, LLP
relberger@boselaw.com

E. Brenda Kpotufe
MATTINGLY BURKE COHEN & BIEDERMAN LLP
brenda.kpotufe@mbcblaw.com

Stephanie Maris
LAW OFFICE OF JOSH F BROWN
stephanie@indyfranchiselaw.com

Jonathan D. Mattingly
MATTINGLY BURKE COHEN & BIEDERMAN LLP
Jon.mattingly@mbcblaw.com