UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRITT INTERACTIVE LLC, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-02884-TWP-DML |
| | ) |
| A3 MEDIA LLC, *et al.*, | ) |
| | ) |
| Defendants/Third-Party Plaintiffs. | ) |
| v. | ) |
| | ) |
| TOM BRITT, *et al.*, | ) |
| | ) |
| Third-Party Defendants. | ) |

**<u>ORDER ON CONSOLIDATED APPLICATION FOR ATTORNEYS' FEES</u>**

This matter is before the Court on a Consolidated Application for Attorneys' Fees ([Filing No. 293](#)) filed by Plaintiffs Britt Interactive LLC and Townepost Network, Inc., and its principals, Third-Party Defendants Tom Britt and Jeanne Britt (collectively, "the Britt Parties" or "Plaintiffs").

## I. <u>INTRODUCTION</u>

This case began in the Hamilton County, Indiana, Superior Court, and it concerns the parties' respective ownership rights and liabilities arising from certain License Agreements for the publication of magazines about and for the communities of Carmel, Indiana and Zionsville, Indiana. The Britt Parties sought and were granted, after a hearing before the Hamilton Superior Court, a temporary restraining order ("TRO") against Defendants A3 Media, LLC, Collective Publishing, LLC, Yelena Lucas, and Neil Lucas (collectively, "the Lucas Parties"). Less than a week after issuance of the TRO, the Lucas Parties removed the case to this Court. Nearly immediately, the Britt Parties filed their motion for contempt of the TRO and a motion for

preliminary injunctive relief.  Discovery ensued, and numerous discovery disputes—including requests for sanctions relating to discovery matters—were resolved by the Court.  Along this way, the Court ordered that the Britt Parties were entitled to their reasonable attorneys' fees for various matters.  The parties have now settled all their disputes except for the fees issue; this Order determines the amount of fees to which the Britt Parties are entitled.

In the course of the litigation, the Court has entered four separate orders that awarded attorneys' fees to the Britt Parties, in amounts to be determined, and one order (Filing No. 190) that awarded $1,000.00 to the Lucas Parties.  The four orders are:

1. Order entered April 14, 2017 (Filing No. 191), awarding the Britt Parties reasonable attorneys' fees incurred in (a) filing their Motion to Compel Discovery ( Filing No. 83) and Motion for Sanctions (Filing No. 138), and (b) communicating with the Lucas Parties after November 23, 2016, at 5:00 p.m., to obtain the documents that were supposed to have been produced at that time and to re-schedule the Lucases' depositions because of the belated production.

2. Order entered April 26, 2017 (Filing No. 196), granting the Britt Parties' Motion to Compel and for sanctions, and awarding them their reasonable attorneys' fees in (a) communicating with the Lucas Parties about their discovery responses (including obtaining them, reading or responding to requests for additional time, and communicating regarding deficiencies), and (b) filing and briefing their Motion to Compel (Filing No. 130).

3. Order entered March 5, 2018 (Filing No. 279), adopting the Magistrate Judge's Report and Recommendation denying the Britt Parties' request for a default judgment, but awarding them their reasonable attorneys' fees incurred in connection with their review of the Lucas Parties' supplemental discovery responses and in bringing their motion for default judgment.

4. Order entered March 6, 2018 (Filing No. 280), adopting the Magistrate Judge's Report and Recommendation on the Britt Parties' Motion for Contempt and awarding them their reasonable attorneys' fees associated with bringing the contempt motion. This Order specifically noted that the amount of fees awarded in conjunction with the Britt Parties' efforts seeking contempt would take into account the level of success they obtained in connection with their contempt motion. *See* Filing No. 280 at p. 8 n. 1.

On March 12, 2018, the court directed the Britt Parties to file one application for attorneys' fees to address all fees they are seeking as a result of the four orders awarding fees addressed above. They did so. The Britt Parties seek a total award of $88,933.45 (which is net of the $1,000 sanction against them). The Lucas Parties contend that any award should not exceed $4,251.50, based on numerous objections included in their opposition brief and supplemental filings.

## II. ANALYSIS

A reasonable attorneys' fee is generally determined by multiplying (1) a reasonable hourly rate by (2) the number of hours reasonably expended. *E.g., Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).

### A. Reasonable Hourly Rate

The Lucas Parties do not challenge the hourly rates used by the Britt Parties' counsel. In this Circuit, a reasonable hourly rate presumptively is that rate the attorney actually charges to and receives from paying clients. *E.g., Montanez v. Simon,* 755 F.3d 547, 553 (7th Cir. 2014); *Mathur v. Board of Trustees,* 317 F.3d 738, 734 and 744 (7th Cir. 2003). The Britt Parties' proof that the rates they used are ones that they actually charge and are paid by clients is unchallenged, and the Court accepts the rates as reasonable.

### B. Reasonable Amount of Time Expended

An award of fees must also evaluate the reasonableness of the time expended by counsel. A lawyer seeking to recover his or her fees is expected to use billing judgment and should seek compensation only for time counsel reasonably would have billed to a paying client. *Hensley,* 461 U.S. at 434 ("Hours that are not properly billed to one's *client* are not properly billed to one's *adversary* pursuant to statutory authority." (Emphasis in original).) In addition, an attorney's records must be detailed enough to permit the opposing party and the court to make informed judgments about whether the time billed accurately reflects work spent on the case and whether it was reasonably spent, but the market does not expect issue-by-issue detail in billing, and neither should the court. *See Fulmore v. Home Depot U.S.A., Inc.,* 2007 WL 1246226 at *3 (S.D. Ind. April 27, 2007) (discussing block billing); *In re Synthroid Marketing Litigation,* 264 F.3d 712, 722 (7th Cir. 2001) ("[The] amount of itemization and detail required is a question for the market. If counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more."). Furthermore, billing statements are read in light of one's knowledge and recall of the docket, status, and progress of the case. *Fulmore,* 2007 WL 1246226 at *3. Several factors guide the Court's analysis of whether time or tasks that the Britt Parties seek to recover under the Court's Orders are reasonable and should be paid by the Lucas Parties.

First, work on matters for which a fee was not awarded should be eliminated. *E.g., Goodyear Tire & Rubber Co. v. Haeger,* 137 S. Ct. 1178, 1182 (2017) (there must be a "causal link between the litigant's misbehavior and legal fees paid by the opposing party").

Second, a court should exclude "excessive, redundant, or otherwise unnecessary" time entries. *Hensley,* 461 U.S. at 434.

Third, purely clerical tasks generally should be excluded. *See Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 553 (7th Cir. 1999) ("court should disallow time spent on what are essentially 'clerical' or secretarial tasks"); *Ace Mortgage Funding, LLC v. Bradford,* 2008 WL 2484600 at *1 (S.D. Ind. June 18, 2008) (routine office overhead is normally absorbed within the attorney's hourly rate). This does not mean, however, as the Lucas Parties contend, that legal work done by a paralegal instead of a lawyer is not compensable. Fees for work performed by paralegals are recoverable under the attorney fee umbrella when their work was of the type that an attorney otherwise would perform. *See Spray-Rite Serv. Corp. v. Monsanto Co.,* 684 F.2d 1226, 1250 (7th Cir. 1982) ("paralegal and law clerk fees are recoverable as a portion of the plaintiff's reasonable attorneys' fees").

Fourth, any award should account for limited success the prevailing party achieved. Where a particular claim or theory is not successful, the court may account for partial success by either eliminating specific hours attributable to the unsuccessful claims or theories or by making an across-the-board percentage deduction to the fees. *See Bryant v. City of Chicago,* 200 F.3d 1092, 1101-02 (7th Cir. 2000). The Court in fact noted this point in the Report and Recommendation following the contempt hearing. *See* Filing No. 251 n. 12. ("An important and 'the most critical' factor in deciding a reasonable fee is degree of success obtained.") (citing *Linda T. ex rel. William A. v. Rice Lake Area School Dist.,* 417 F.3d 704, 708 (7th Cir. 2005)). The Britt Parties were not successful in demonstrating that all of the conduct they complained about violated the TRO.

The Court takes these matters into account and explains below various deductions it has made to the fees the Britt Parties seek. The Court has carefully reviewed each of the "objections and bases" for reduction advanced by the Lucas Parties (*see* Filing No. 198), but it does not

5

endeavor to provide an audit-like analysis of each of their contentions. Moreover, the Court notes that some of the work performed by the Britt Parties' lawyers is compensable under more than one of the Court's Orders awarding fees. Where work is compensable *only* under the contempt order, the Court will adjust the fee to account for lack of success, but if the work is also compensable under one of the other three orders, the Court will not make such an adjustment.

The Court ultimately is guided by its objective to make an award that is reasonable in light of the matters for which the Britt Parties were awarded fees and, as to the contempt-related work, to consider overall success. As the United States Supreme Court has recognized, a court "need not, and indeed should not, become green-eyeshade accountants" in reviewing fee petitions. The "essential goal" is to do rough justice, not to achieve auditing perfection. *Fox v. Vice,* 563 U.S. 826 (2011). A court "may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* at 838.

With these principles in mind, the Court makes the following evaluations of the Britt Parties' Consolidated Application.

**A.**     **Work not covered by any fee awards**

The Britt Parties seek an award of fees for preparation for the initial pretrial conference and for initial discovery requests. These standard, normal tasks should not be encompassed by the Court's awards. The Court therefore disallows all fees sought for October 25 and 26, 2016. This disallowed amount is $4833.00.

**B.**     **Reductions for excessive, inefficient, or insufficiently described work**

This case was litigated on the Britt Parties' behalf by two separate law firms working in parallel at most times. The Court has no quarrel with multiple lawyers or firms working on a case, and it recognizes that collaboration among lawyers can add real value to the legal services

provided. But, it expects that in those circumstances, the time entries will reflect an appropriate division of labor among the lawyers and the fact of true collaboration, rather than mere duplication of the same tasks and conferences among those lawyers. The latter approach produces inefficiencies and redundancy, and the time entries reflect that that happened in this case. Numerous time entries reveal that Mr. Mattingly and Mr. Brown spent hours talking to one another, reviewing the same items, and giving "attention to" the very same tasks. These entries do not reveal an efficient division of labor; indeed, they tend to suggest that each of them spent more time litigating the case than he individually would have done had another firm not been involved. To account for that, the Court has reduced most (but not all, as explained below) of Mr. Brown's time by sixty percent (60%). Those affected time entries equal $9,967.50, so the Court reduces the award by $5,980.50 on this basis. However, the Court makes no reduction on this basis for attorney time during the period March 14 through March 23, 2017. During this period, counsel were actively preparing for and participating in the contempt hearing and related matters, and the Court's view of this period is that the parties efficiently divided the labor between the two law firms.[1] The Court also makes no reduction of certain time entries by Mr. Brown—dated December 14, 2016 and May 22, 23, 26, and 27, 2017—because the tasks reported were not covered by duplicative time entries of others. These entries are allowed in their entirety.

C.   Reductions for clerical tasks

The Lucas Parties take issue with all the time entries for work done by paralegals because the Court's awards referred to "attorney fees". This broad assertion is not persuasive. As a general rule, fees incurred for work by paralegals are recoverable under the attorney fee umbrella. *See*

---

[1] The Court does not intend to suggest by focusing on Mr. Brown's time entries rather than Mr. Mattingly's the appropriate disposition of fees recovered as between their two firms. The purpose of these reductions is to account for inefficiencies and duplication, and the Court could have just as easily performed this exercise on Mr. Mattingly's time instead.

*Spray-Rite Serv. Corp. V. Monsanto Co.*, 684 F.2d 1226, 1250 (7th Cir. 1982) ("paralegal and law clerk fees are recoverable as a portion of the plaintiff's reasonable attorneys' fees"). The pertinent question, as noted above, is whether the tasks are of the sort that an attorney would otherwise have had to perform them or whether they are clerical and should therefore be considered part of the firm's overhead. The Court deems tasks described by a paralegal as "gave attention to" or "calendared" or "filed" to be primarily clerical. It has reduced paralegal time by $1,923.50 to account for this.

### D.   Reduction for limited success achieved

Though the Court found the Lucas Parties in contempt of the TRO, the Britt Parties were not successful on several the violations they had asserted. They alleged that the Lucas Parties had "violated the TRO nearly every single day during the October 17th to November 14th TRO period." Filing No. 112 at p. 5. The Court, however, ultimately found six violations during a six-day period (October 19 to October 24, 2016). The lack of success on the Britt Parties' other assertions of violation is attributable primarily to three determinations. First, the TRO was not yet in effect at the point of certain alleged violations. Second, several apparent violations of the TRO on October 19, 2016 actually occurred before the effective time of the TRO based on a time stamp issue.[2] Third, and most significantly, certain conduct at issue did not violate unambiguous dictates in the TRO.[3] In essence, the Britt Parties tried to establish that *all* activities of the Lucas Parties in

---

[2] The Court does not consider this "loss" a factor that should diminish the fee award. It was based on an assertion that the Lucas Parties did not raise until the hearing.

[3] In particular, the Britt Parties were unsuccessful in their claims (1) that the Lucas Parties had interfered with the contracts between TownePost and its advertisers, because the Court found that this language was ambiguous and there was no evidence to allow the Court even to identify the contracts that existed between TownePost and its advertisers; (2) that the Lucas Parties' distribution of "Zionsville Monthly" and "Carmel Monthly" after the TRO was a violation of the TRO; and (3) that the Britt Parties had violated the injunction's general proscription of "infringement" in violation of federal and state laws, because the Court found that the language in the TRO was not clear enough to support a finding of contempt. *See* Filing No. 251 n. 11.

8

dealing with advertisers and readying publication of community magazines after the TRO were contemptuous, but they were not able to tie specific conduct to specific prohibitions in the TRO, except for certain continued uses by the Lucas Parties of Carmel Magazine and Zionsville Magazine after the TRO was issued.

In sum, the Britt Parties achieved substantial success in that they established violations of the TRO, but they did not prevail on their overarching theory and on a number of asserted violations for which they incurred significant attorneys' fees litigating. This observation does not, however, mean that the fees awarded should be directly proportional to that measure of success. A large portion of the fees had to be incurred regardless—whether the Britt Parties had asserted six violations or sixty. Nevertheless, some reduction must be made to account for the issues they litigated in connection with the contempt motion on which they did not prevail. The Court determines that a thirty-five percent (35%) reduction of the fees recoverable by virtue of the contempt order only to be appropriate.[4] The total amount sought under the Court's contempt award, less the amounts already disallowed for inefficiencies and clerical work, is $27,131.50. A thirty-five percent reduction is $9,496.02.

### III. CONCLUSION

The Consolidated Application seeks an award of $88,933.45. This amount is net of a $1,000.00 sanction the Court issued against the Britt Parties. The Court makes the following reductions of the amount sought: (1) $4,833.00 for fees not encompassed by the awards; (2) $5,980.50 for inefficiencies; (3) $1,923.50 for tasks that were essentially clerical in nature; and (4) $9,496.02 to account for some lack of success on the Motion for Contempt. Therefore, the Consolidated Application for Attorneys' Fees (Filing No. 293) is **GRANTED** and the Court

---

[4] If the fees are recoverable under a separate award, the Court will not apply the reduction. Also, the Court has not included any fees disallowed in other sections of this Order in calculating the thirty-five percent.

**awards the Britt Parties** an amended total award of **$66,700.43**. All Defendants except Janelle Morrison (who was not subject to the TRO) are jointly and severally liable for this amount.

**SO ORDERED.**

Date: ____3/26/2019_____

*[Signature: Tanya Walton Pratt]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Josh F. Brown
COHEN GARELICK & GLAZIER
josh@indyfranchiselaw.com

Danford Royce Due
DUE DOYLE FANNING & ALDERFER LLP
ddue@duedoyle.com

E. Brenda Kpotufe
MATTINGLY BURKE COHEN & BIEDERMAN LLP
brenda.kpotufe@mbcblaw.com

Charles J. Maiers
DUE DOYLE FANNING & ALDERFER LLP
cmaiers@duedoyle.com

Stephanie Maris
COHEN GARELICK & GLAZIER
stephanie@indyfranchiselaw.com

Jonathan D. Mattingly
MATTINGLY BURKE COHEN & BIEDERMAN LLP
jon.mattingly@mbcblaw.com